1

2

3

4

5

6

7

8                          UNITED STATES DISTRICT COURT

9                      FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JULIO CESAR GARCIA BANDERAS,            Case No.  1:25-cv-1529-JDP

12                  Petitioner,

13         v.                                ORDER

14   GOLDEN STATE ANNEX,

15                  Respondent.

16

17         Julio Cesar Garcia Banderas seeks a writ of habeas corpus under 28 U.S.C. § 2241.  He is

18   a Mexican national who applied for Deferred Action for Childhood Arrivals ("DACA") on

19   November 7, 2012, and was approved for that status on April 25, 2013.  ECF No. 9 at 2.  His pro

20   se petition is somewhat difficult to understand and raises numerous arguments in favor of release

21   or, in the alternative, a bond hearing, but read in conjunction with the government's answer, it is

22   apparent that the central issue is whether petitioner is properly detained under 8 U.S.C.

23   § 1225(b)(2)(A), or whether instead his detention is governed by 8 U.S.C. § 1226(a).  After

24   review of the pleadings, I find that the petition should be granted and order that petitioner be

25   given a bond hearing under 8 U.S.C. § 1226(a) within seven days.[1]

26

27   _____

28         [1] The parties have consented to magistrate judge jurisdiction, and this case was re-
     assigned to the undersigned on January 9, 2026.  ECF No. 13.

                                                  1

**Background**

Petitioner is a Mexican national whose application into the DACA program was accepted in 2013.  ECF No. 9-1 at 2.  He was arrested by local law enforcement on May 25, 2025, after allegedly driving under the influence of alcohol.  *Id.*  Petitioner was detained by immigration officials the next day, after he was released from county jail.  *Id.*  Since his detention, he has appeared in front of an immigration judge twice.  Both times, the judge determined that she lacked jurisdiction over petitioner's request for custody redetermination.  *Id.*  The basis for this asserted lack of jurisdiction is not stated explicitly; notably, petitioner is a pro se litigant and his petition does not relate the full specifics of the procedural history.  From my review of the pleadings, I understand that the alleged jurisdictional issue arises from the government's position that, as an individual detained under 8 U.S.C. § 1225, petitioner is not entitled to a bond hearing.[2] Accordingly, despite reference in the pleadings to two "bond hearings," petitioner was never afforded an actual bond hearing at which a neutral arbiter could weigh his specific circumstances and determine whether release on bond was appropriate.  I recognize that petitioner has an upcoming hearing on the "master calendar," ECF No. 9-1 at 3, but it does not appear that the currently planned proceedings will include the consideration of bond that, as explained below, he is entitled to by right.

**Legal Standard**

A federal court may grant habeas relief when a petitioner shows that his custody violates federal law.  *See* 28 U.S.C. §§ 2241(a), (c)(3), 2254(a); *Williams v. Taylor*, 529 U.S. 362, 374-75, (2000).  Pursuant to 28 U.S.C. § 2241, federal district courts "within their respective jurisdictions" may hear habeas petitions by individuals who claim to be held "in custody in violation of the Constitution or laws or treaties of the United States."

---

[2] I note that the "bond hearings" that petitioner has been afforded, at which the immigration determined that she lacked jurisdiction to reconsider his detention status, came shortly after (in July and August of 2025) the government issued a memorandum reinterpreting section 1225 and giving it near universal applicability to unadmitted noncitizens, regardless of how long they have been in the country.  *See* https://www.cbp.gov/document/foia-record/detention-applicants-admission.

**Analysis**

The court must consider which of two statutory frameworks governs petitioner's detention.  The government maintains that petitioner is subject to mandatory detention under 8 U.S.C. § 1225(b)(2)(A), and that an alternative statutory pathway, under 8 U.S.C. § 1226(a), can be ignored.  Under section 1225(b)(2)(A), applicants "seeking admission" to the United States are subject to mandatory detention: "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained for a proceeding under section 240."  8 U.S.C. § 1225(b)(2)(A).  No bond hearing is provided.  *Id.*  By contrast, "[u]nder section 1226(a) and its implementing regulations, a detainee may request a bond hearing before an [immigration judge] at any time before a removal order becomes final."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1197 (9th Cir. 2022).

Until a few months ago, the government consistently applied section 1226(a), and not section 1225(b)(2)(A), to noncitizens who, like petitioner, were present in the interior of the United States, arrested by an immigration official, and eligible for removal.  *See id.* at 1196 ("The provision at issue in this case, 8 U.S.C. § 1226, provides the general process for arresting and detaining aliens who are present in the United States and eligible for removal.").  The government does not dispute this, acknowledging that, "[u]ntil recently, the government interpreted § 1226(a) to be an available detention authority for aliens [present without being admitted or paroled] placed directly in full removal proceedings under § 1229a."  ECF No. 9 at 7.  However, the government now maintains that section 1225(b)(2)(A)—and not section 1226(a)—applies to all immigrants to the United States who have not been lawfully admitted, regardless of how long they have been present in the country.  The question of whether this new interpretation is lawful is one of statutory interpretation, and so the court begins with the plain text of the Immigration and Nationality Act ("INA").  *See United States v. Lillard*, 935 F.3d 827, 833-34 (9th Cir. 2019).

Section 1225 provides that "in the case of an alien who is an applicant for admission, if the examining immigration officer determines that an alien seeking admission is not clearly and beyond a doubt entitled to be admitted, the alien shall be detained."  8 U.S.C. § 1225(b)(2)(A).

1    There is only one exception to this mandatory detention under section 1225(b)(2): the noncitizen

2    may be paroled into the United States "for urgent humanitarian reasons or significant benefit"

3    under 8 U.S.C. § 1182(d)(5).  *Jennings v. Rodriguez*, 583 U.S. 281, 288 (2018).

4        While section 1225's text limits its reach to applicants "seeking admission," section 1226

5    does not include the same qualifying language.  The default rule, section 1226(a), provides that,

6    for a noncitizen who is arrested and detained "[o]n a warrant issued by the Attorney General," the

7    Attorney General (1) "may continue to detain" the arrested noncitizen, (2) "may release" the

8    noncitizen on "bond," or (3) "may release" the noncitizen on "conditional parole."  8 U.S.C.

9    §§ 1226(a)(1)-(2).  Section 1226(c) excludes certain categories of noncitizens from discretionary

10   release under section 1226(a).  "Under § 1226(c), the 'Attorney General shall take into custody

11   any alien' who falls into one of several enumerated categories involving criminal offenses and

12   terrorist activities."  *Jennings*, 583 U.S. at 289.  Thus, the plain text of section 1225(b)(2) limits

13   its application to noncitizens "seeking admission" to the United States.  According to the

14   government, all noncitizens who have not been admitted to the United States—i.e., "applicants

15   for admission"—are necessarily "seeking admission" for purposes of section 1225(a)(b)(A).  Put

16   differently, the government contends that § 1225(b)(2) applies to all noncitizens who have not

17   been admitted regardless of how long they have been in the country.  ECF No. 9 at 3.

18       As an initial matter, the government's reading would require the court to conclude that

19   Congress unnecessarily included the phrase "seeking admission" when drafting § 1225.  Courts,

20   however, presume that Congress intended its words to have meaning.  *See United States, ex rel.*

21   *Polansky v. Exec. Health Res., Inc.*, 599 U.S. 419, 432 (2023) ("[E]very clause and word of a

22   statute' should have meaning.") (internal quotation marks omitted).  Under its plain text, for

23   section § 1225(b)(2)'s mandatory detention to apply, "a noncitizen must (1) be an applicant for

24   admission, (2) be 'seeking admission', and (3) be 'not clearly and beyond a doubt entitled to be

25   admitted.'"  *J.S.H.M. v. Wofford*, No. 1:25-cv-1309-JLT-SKO, 2025 WL 2938808, *11 (E.D. Cal.

26   Oct. 16, 2025).  If all "applicants for admission" were also individuals "seeking admission," the

27   phrase "seeking admission" would be unnecessary.  Such a reading would run contrary to the rule

28   against surplusage.  *Polansky*, 599 U.S. at 432 ("[E]very clause and word of a statute should have

1    meaning."); *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001) ("[N]o clause, sentence, or word shall

2    be superfluous, void, or insignificant.") (quoting *Duncan v. Walker*, 533 U.S. 167, 174 (2001));

3    *see Lopez Benitez v. Francis*, No. 25 Civ. 5937 (DEH), 2025 WL 2371588, at *6 (S.D.N.Y. Aug.

4    13, 2025) (holding that 1225(b)(2) did not apply to a noncitizen already residing in the country

5    because "she was not 'seeking admission' at" the time of her arrest).

6    　　　More fundamentally, the government's interpretation cannot be squared with the text of

7    section 1226.  First, were it possible to read section 1225 in the manner favored by the

8    government, section 1226(a)'s requirement that detained noncitizens be afforded bond hearings—

9    arguably the centerpiece of section 1226—would serve no purpose.  This would run afoul not

10   only of the rule against surplusage, *see supra*, but would clash with the Supreme Court's

11   acknowledgement, in 2018, of section 1226(a)'s continued relevance.  *See Jennings*, 583 U.S. at

12   306 ("Federal regulations provide that aliens detained under § 1226(a) receive bond hearings at

13   the outset of detention.").

14   　　　Second, under section 1226(c), Congress included categories of noncitizens whose

15   detention is mandatory, including those determined to have committed certain criminal offenses.

16   8 U.S.C. § 1226(c).  If, as the government now contends, section 1225 applied to all noncitizens

17   who are inadmissible, this provision of section 1226 would also be superfluous.

18   　　　Notably, in *Jennings*, the Supreme Court rejected different arguments that would have

19   rendered 8 U.S.C. § 1226(c) superfluous, stating, "[f]ar from being redundant, then, § 1226(c) and

20   the PATRIOT Act apply to different categories of aliens in different ways.  There is thus no

21   reason to depart from the plain meaning of § 1226(c) in order to avoid making the provision

22   superfluous." *Jennings*, 583 U.S. at 305.  Against this backdrop, it would make little sense to

23   accept the government's argument that both sections 1226(a) and 1226(c) have been taken out of

24   commission, not by any new law or act of Congress, but by a shift in executive branch policy.

25   　　　Finally, the Laken Riley Act ("LRA")—passed less than a year ago—bears mention.  The

26   LRA amended section 1226(c) to create new categories of mandatory detention.  *See Garcia v.*

27   *Noem*, No. 25-cv-02180-DMS-MMP, 2025 WL 2549431, at *6 (S.D. Cal. Sept. 3, 2025)

28   (describing the LRA).  But, under the government's theory of section 1225, this new law would

be unnecessary; if mandatory detention for all unauthorized noncitizens were already permitted—and, in fact, required—by section 1225, the LRA would be surplusage.  "When Congress acts to amend a statute, [courts] presume it intends its amendment to have real and substantial effect." *Stone v. I.N.S.*, 514 U.S. 386, 397 (1995); *see Marx v. Gen. Revenue Corp.*, 568 U.S. 371, 386 (2013) ("[T]he canon against surplusage is strongest when an interpretation would render superfluous another part of the same statutory scheme.").  And, here, the remarkable recency of the amendment shows that, far from considering section 1226 a dead letter, Congress considers it worthy of upkeep.

In response, the government urges the court to consider section 1225 in isolation.  ECF No. 9 at 7 (arguing that section 1225 is "the sole applicable immigration detention authority for *all* applicants for admission").  The court, however, must construe statutes as a whole and give effect to their plain text.  *See King v. Burwell*, 576 U.S. 476, 486 (2015) (in determining the correct reading of a statute, courts must read "words in their context and with a view to their place in the overall statutory scheme") (quotations omitted); *Graham Cnty. Soil and Water Conservation Dist. v. United States ex rel. Wilson*, 559 U.S. 280, 290 (2010) ("Courts have a duty to construe statutes, not isolated provisions.") (quotations omitted).  A shift in policy does not permit this court to turn a blind eye to the remainder of the INA.

And, as noted *supra*, the government acknowledges that, until recently, it was longstanding agency practice to interpret these provisions as this court now finds they should be read.  This is not without significance, since prior agency practice, though not dispositive, can help inform this court's determination of law.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 386 (2024) ("[T]he longstanding practice of the government—like any other interpretive aid—can inform [a court's] determination of what the law is.") (internal quotation marks omitted).  Other courts have emphasized the same.  *See Rodriguez v. Bostock*, 779 F. Supp. 3d 1239, 1259 (W.D. Wash. Apr. 24, 2025) ("Congress enacted the [Laken Riley Act] against the backdrop of longstanding agency practice applying Section 1226(a) to inadmissible noncitizens already residing in the country.").

The court notes that arguments substantially similar to those made by the government here

6

1    have been rejected by a large majority of district courts nationwide.  *See, e.g.*, *Sandigo Manzanez*

2    *v. Bondi*, No. 1:25-cv-01536-DC-CKD (HC), 2025 WL 3247258, *3 (E.D. Cal. Sept. 3, 2025)

3    ("[T]he legal arguments Respondents rely upon to support their position that section 1225 applies

4    here have been consistently rejected by a majority of courts in this district, and courts across the

5    country."); *Valencia Zapata v. Kaiser*, No. 25-CV-07492-RFL, 2025 WL 2741654, at *10 (N.D.

6    Cal. Sept. 26, 2025) (collecting cases).[3]  The government's argument also runs contrary to the

7    Supreme Court's interpretation of the relevant statutes in *Jennings*, wherein the Supreme Court

8    observed that section § 1225(b) "applies primarily to aliens seeking entry into the United States,"

9    while sections 1226(a) and (c) "authorizes the Government to detain certain aliens already in the

10   country pending the outcome of removal proceedings . . . ."  *Id.*

11       Accordingly, I find that petitioner's potential detention is governed by section 1226 and

12   therefore that he is entitled to a bond hearing.  In so deciding, I finds it unnecessary to weigh, as

13   the government invites the court to do, which party should carry the burden of persuasion at such

14   a hearing.

15       Accordingly, it is hereby ORDERED that:

16       1.  The petition, ECF No. 1, is GRANTED.

17       2.  Petitioner shall be provided a bond hearing under 8 U.S.C. § 1226(a) within seven days

18   of the date of this order.

19       3.  Within ten days, the government shall provide a status update indicating whether

20   petitioner has received a bond hearing and what his detention status is.  If petitioner is released

21   after a bond hearing, the government is enjoined and restrained from re-detaining petitioner,

22   absent exigent circumstances, without first providing petitioner with written notice and a pre-

23   detention hearing before a neutral adjudicator.

24       4.  The Clerk of Court is directed to close this case and enter judgment accordingly.

25

26

27       [3] The Board of Immigration Appeals endorsed the government's position in *Matter of
     Yajure Hurtado*, 29 I&N Dec. 216 (BIA 2025).  The persuasive power of the BIA's ruling,

28   however, is limited.  *See Loper Bright Enters. v. Raimondo*, 603 U.S. 369, 400 (2024).

IT IS SO ORDERED.

Dated:    January 13, 2026

JEREMY D. PETERSON
UNITED STATES MAGISTRATE JUDGE